# Daly *v.* Mallory *et al.*, Executors, and Reese *v.* Mallory *et al.*, Executors.

*Action upon Bond of General Administrator.*

1. *General administrator; appointment and continuance in office.* Under the provisions of the statute, (Code, § 2027), after a person has been duly appointed general administrator, whose term of office expires with the expiration of the term of the judge who appointed him, such person can be continued in office by the succeeding judge, in which event the bond originally given by him, if otherwise sufficient, will be good, and the administrator and sureties bound thereby.

2. *Same; condition of general administrator's bond.*—Under the provisions of the statute (Code, § § 2027, 2028), the condition

[Daly v. Mallory *et al.*, Executors.]

[Reese v. Mallory *et al.*, Executors.]

of the bond given by a general administrator, who had been duly appointed by the judge of probate of the county, is that the general administrator shall faithfully administer all estates which may come into his charge as such administrator during the term of his present appointment, or during any subsequent period in which he may be continued in office.

3. *Same; not essential to continuance in office that order to that effect should be entered upon minutes of probate court.*—In order for a general administrator to be continued in office by the judge succeeding the judge who appointed him, it is not essential that there should be entered upon the minutes of the probate court a formal order or memorandum evidencing the fact of such continuance; and this is true notwithstanding the statute (Code, § 789) makes it the duty of the judge of probate "to keep minutes of all his official acts and proceedings; and within three months thereafter to record the same in well bound books."

4. *Same; how continued in office.*—Where, after the expiration of the term of the probate judge who appointed a certain named person as general administrator of the county, the succeeding judge appointed no one as the successor of such general administrator, and made no note or record of the fact that he was continued in office, but said general administrator continued the administration in the probate court of estates which had already come into his hands, and the succeeding probate judge, after the commencement of his term, treated the said general administrator as continuing in such capacity and committed to him as such the administration of numerous estates by letters of administration issued to him from time to time, such facts constitute a continuance by the succeeding probate judge of said person in the office of general administrator of the county.

5. *Same; when there is no hiatus in the tenure of office of general administrator.*—There is no hiatus in the tenure of the office of general administrator, because no letters of administration were issued to him immediately upon the induction into office of the probate judge succeeding the judge who appointed such general administrator, where the succeeding judge, by his acts and by committing the administration of estates to such general administrator from time to time, treated him as continuing in office.

6. *Same; sureties on bond liable for breach, although there was no formal order made continuing party in office.*—Where a general administrator, by the acts of the probate judge suc-

[Daly v. Mallory *et al.*, Executors.]

[Reese v. Mallory *et al.*, Executors.]

ceeding the judge who appointed him which show unmistakably his intention to do so, is continued in office, the sureties on the bond originally given by him, are, under the statute, liable for any default or breach of the bond on the part of such general administrator in the administration of the estates committed to him during the time he is continued in office by the succeeding judge; and this is true notwithstanding there has been no formal order or memorandum made by the succeeding probate judge on the minutes of his court, evidencing the fact of the continuance in office of such general administrator.

7. *Same; same; sufficiency of complaint in action for breach of bond.*—A complaint claiming damages for the breach of the condition of a general administrator's bond, in respect of an estate coming into the hands of the principal in said bond, after the expiration of the term of office of the probate judge who appointed him general administrator, in order to be sufficient, must aver that such general administrator had been continued in office by the succeeding probate judge.

8. *Same; same; case at bar.*—In an action against the sureties on the bond of a general administrator, a complaint is sufficient which avers that the principal in said bond was appointed general administrator by the probate judge of the county at the time of his entering upon the duties of his office as such judge, and the bond sued on was given at that time, that at the expiration of the term for which said probate judge was elected, the same person was re-elected probate judge of said county and, upon his being inducted into office for the succeeding term, made no appointment of any person to the office of general administrator of the county, nor did he make or enter a formal order continuing the principal in said bond therein, but that he continued, after the commencement of the second term to treat said person as continuing to be the general administrator of the county and committed to him as such administrator numerous estates by letters of administration issued to him, from time to time; such complaint sufficiently averring a continuance of the general administrator in office by the succeeding probate judge.

9. *Pleading and practice; when demurrers erroneously sustained to complaint.*—Where in a complaint containing several counts, there is at least one good count, it is error to sustain a demurrer interposed to the entire complaint.

APPEALS from Selma City Court.

Tried before the Hon. J. W. MABRY.

These two cases involve the same questions and were submitted together. Each of the cases was brought against H. S. D. Mallory and J. C. Compton as executors of the will of N. H. R. Dawson, deceased.

The following facts were averred in the first count, in each of the cases: On November 5, 1880, P. G. Wood, then the Probate Judge of Dallas County, appointed John Finley White general administrator for Dallas County; and entered up the order on the minutes of the Probate Court that such appointment had been made. On the same day, November 5, 1880, the said White executed his bond as general administrator with N. H. R. Dawson and others as sureties thereon. This bond is for ten thousand dollars, and recites the appointment of White as general administrator in and for Dallas County, and is conditioned as required by the statute that the principal "should faithfully administer all estates which may come to his charge as such general administrator."

P. G. Wood's term of office as probate judge expired on November 5, 1886. He was re-elected in August, 1886, and qualified as such Probate Judge and entered upon the discharge of the duties of the office on November 6, 1886.

There were no averments in either of the counts of the complaints that there was an order made and entered up by the Probate Judge after November 6, re-appointing John Finley White general administrator for Dallas County. It was also averred in each of the complaints that N. H. R. Dawson died February 1, 1895, and H. S. D. Mallory and J. C. Compton qualified as executors of his estate.

In the case of Daly v. Mallory, the complaint contained three counts. The first count averred the facts as above stated, and set out in detail the orders of the probate court incident to the appointment of White as general administrator of Dallas County; and the bond sued on. After averring the re-election of P. G. Wood as Probate Judge, the complaint then averred "that the

said P. G. Wood, as such Judge of Probate by reason of his re-election as aforesaid, did succeed himself in said office, for and during the said term so commencing the first Monday in November, 1886, and did duly continue the said John F. White in his said office of general administrator of and within said Dallas County, and which office he, said John Finley White held from the 5th day of November, 1880, and continued to hold until he resigned the same," which was on August 8, 1898.

It was then averred in said first count that Bridget Corcoran, an inhabitant of said county died in May, 1886, and left a will wh'ch was probated, and by the will a legacy was given to the plaintiff; that on May 11, 1887, said White in his capacity as general administrator, was appointed administrator with the will annexed of the estate of Bridget Corcoran. The provisions of the will, so far as they relate to the legacy given to the plaintiff, are set out in the opinion. It was then averred in the bill that after removal of the administration of the estate of said Bridget Corcoran into the Chancery Court on bill filed by White as administrator, on the settlement of said estate, there was a decree rendered on January 12, 1891, against said White in favor of the plaintiff for the amount of the legacy, and that said decree was still due and unpaid.

The second count is for the same money, two hundred and sixty-one dollars and forty-eight cents and interest, for the breach of the condition of the same bond, and it avers that the condition was broken by the said John F. White in that he failed to pay the sum of two hundred and sixty-one dollars and forty-eight cents for which the decree was rendered in the plaintiff's favor on the 12th day of January, 1891, on which decree execution had issued and been returned "no property found."

The third count claims the same amount of money for the breach of the condition of the same bond, made by White and his sureties on the 5th day of November, 1880, with condition faithfully to administer all estates which should come to his charge as such administrator;

and it avers that the condition of the bond was broken; that John F. White did administer on the estate of Bridget Corcoran, and that it was adjudged that John F. White, as such administrator, was due and indebted to the plaintiff as legatee under the will of Bridget Corcoran in the sum claimed; that execution was issued on the decree and returned "No property found."

There was a demurrer to each of these counts. The demurrer to the first count, in various forms, is to the effect that there is no sufficient averment in the count to show that John F. White, after the term for which he was appointed in 1880, was continued in office as general administrator, by the Judge of Probate; that there was no statement in the complaint of when or how or by what sort of order, either verbal or written said John F. White was continued in office. The demurrer to the second count is to the effect that it shows no breach of the condition of the bond, and that it failed to show that Dawson was in any way connected with the default of John F. White stated in said count. There was also a demurrer to the third count on the ground that it failed to show a breach of the condition of the bond sued on; and failed to aver that John F. White ever became the administrator of the estate of Bridget Corcoran.

In the case of Reese v. Mallory, et al., as executors, the suit was brought by H. F. Reese as administrator of the estate of Christine Heinz. The complaint as amended contained seven counts. The first count after averring the facts as hereinbefore stated, averred: "That the term of office of the probate judge expired on November 6, 1886, and said P. G. Wood, having been re-elected to succeed himself, duly qualified as such probate judge on, to-wit, November 6, 1886; that said John F. White, although not specially appointed in writing by said Wood to the office of general administrator, he was continued in said office by said Wood, as probate judge, numerous estates being committed to him as such general administrator, among which was the estate of said Christine Heinz." It was then averred in said complaint that J. F. White, as such general admin-

istrator, was appointed administrator of the estate of Christine Heinz on November 16, 1886, and entered upon the discharge of the duties of said administrator; that said White resigned as such general administrator of Dallas County on August 18, 1890, that on August 18, 1890, the plaintiff, H. F. Reese, was appointed administrator *de bonis non* of the estate of Christine Heinz and letters of administration were issued to him; that on October 13, 1890, White filed his accounts and vouchers for a final settlement and on March 9, 1891, a decree was rendered against him as such administrator in favor of the plaintiff Reese, as administrator *de bonis non* of the estate of Christine Heinz, deceased, for $950; and that no part of said judgment has been paid.

Six additional counts were added as an amendment to the original complaint before the demurrer of appellees was acted upon by the court. The amendments aver the same facts as the original complaint, except each avers differently the continuance of White as administrator. (1.) The first additional count avers the continuance of White in office, as follows: "That said John F. White was continued in office of general administrator for Dallas County by said P. G. Wood, as probate judge, in this: 'That he, said White, continued to perform the duties of general administrator and to act as such general administrator and was recognized as such by said P. G. Wood, Probate Judge as aforesaid, before and after the sixteenth day of November, 1886." (2.) The second additional count avers the continuance as follows: "The said John F. White was continued in office of general administrator of Dallas county, by an order of the probate court in words and figures, as follows: 'Monday, November 15th, 1886, it is ordered by the court that John F. White be, and he is hereby continued in the office of general administrator of Dallas county, Alabama.'" (3.) The third additional count avers the continuance in office as follows: "And the said Wood as probate judge as aforesaid, did continue the said White in the office of general administrator within Dallas County." (4.) The fourth ad-

[Daly v. Mallory *et al.*, Executors.]

[Reese v. Mallory *et al.*, Executors.]

ditional count avers the continuance of White in office as follows: "And that on, towit, November 16th, 1886, ten days after he, said Wood, qualified as such probate judge, did commit the said estate of Christine Heinz to said White as General Administrator of Dallas County, before any person was appointed to succeed said White as such General Administrator." (5.) The fifth additional count avers the continuance of White in office as follows: "That the said John F. White was continued in the office of general administrator for Dallas County, by the said P. G. Wood, in this: That the said P. G. Wood, Probate Judge as aforesaid, did commit to him as general administrator of Dallas county, on, towit, the sixteenth day of November, 1886, the estate of Christine Heinz to be administered upon by said White as such general administrator." (6) The sixth additional count avers the continuance of White as follows: "That said John F. White was continued in the office of general administrator of Dallas county, by said P. G. Wood, as probate judge in this: That the said P. G. Wood, as probate judge, did continue the said White in the office of General Administrator of Dallas County by an order of the Probate Court of Dallas County in words and figures as follows: 'It is ordered by the court that John F. White be, and he is hereby continued in the office of General Administrator within Dallas county, Alabama. Monday, June 17th, 1887.'"

To the original complaint and each count added as amendments, the appellees filed numerous grounds of demurrer, but, in substance, they all raised the question that White was not continued in office and that the estate of Heinz was committed to him after his office had expired.

The several demurrers to the complaint in each of the cases were sustained respectively, and to each of the rulings of the court sustaining said demurrers the respective plaintiffs separately excepted; and in each case, after the court sustained said demurrers, the plaintiff declined to plead further, and judgment was rendered in favor of the defendants.

The plaintiff in each case appeals from the judgment

rendered in favor of the defendants therein, and assigns as error the sustaining of the demurrers to the complaint.

GASTON A ROBBINS, for Daly.—The averments of the complaint show a *devastavit* by the princial in the bond; and are sufficient to show a *prima facie* liability on the part of the sureties.—*Grimmet v. Henderson*, 66 Ala. 521; *Burke v. Mutch, Ib.* 568; *Kyle v. Mays*, 22 Ala. 692.

Whether or not John F. White was continued in office of General Administrator by the Judge of Probate is a jurisdictional fact, to be ascertained by the Court previous to the appointment of said John F. White, administrator of the estate of Bridget Corcoran; and the presumption of law is, that, the Judge of Probate adjudged every fact and question to authorize the Court to exercise jurisdiction in the appointment of John F. White administrator of the estate of Bridget Corcoran. 1 Brick. Dig. 941; 2 Freeman on Judgments, § 523; *Lanford v. Dunklin & Reese, Admr.*, 71 Ala. 594; *May v. Marks*, 74 Ala. 249; *Clancy v. Stephens*, 92 Ala. 577; *Sims v. Waters*, 65 Ala. 442; *Goodman v. Winter*, 64 Ala. 410; *Ikelheimer v. Chapman's Admrs.*, 23 Ala. 676; *Bland v. Bowie*, 53 Ala. 152; *Gray's Admr.'s v. Cruise*, 36 Ala. 559; *Morgan v. Casey, Adm'r.*, 73 Ala. 222; *Florentaine v. Barton*, 2 Wall. 210; *Grignon v. Astor*, 2 How. 319.

Furthermore, the first count of the complaint avers, that John F. White was *duly continued in the office* of general administrator, and that during his said continuance, and in the term of such Judge of Probate, which commenced on the 6th day of November, 1886, said John F. White, in his capacity as general administrator had numerous estates committed to him, which under his said office of general administrator, he administered and that said John F. White on the 11th day of May, 1887, petitioned said Judge of Probate to grant him letters of administration, as such general administrator of said county of Dallas, on the estate of Bridget Corcoran, deceased, with the will annexed,

etc.; and the said petition of the said John F. White, as aforesaid, was granted, and that letters of administration were by said court of probate issued and granted to said John F. White, as such general administrator, on the estate of said Bridget Corcoran, on the 11th day of May, 1887; and that after his appointment, as aforesaid, possessed himself of the property belonging to said estate, etc. The averment that the general administrator was *duly continued* in the office of general administrator is sufficient.—*Russell v. Erwin, Adm'r.,* 41 Ala. 292. As to the conclusiveness of letters testamentary and of administration issued and granted by the Court of Probate, see Code (1886,) § 2034; *Barclift v. Treece,* 77 Ala. 528.

The law of estoppel is conclusive against the general administrator *and his sureties* in denying liability on his official bond. Neither the principal or *surety* can question the legality of his appointment.—7 Amer. & Eng. Encyc. of Law, p. 229; *Lamkin v. Heyer,* 19 Ala. 228; *Thompson v. Bondurant,* 15 Ala., 346; *Sprowl v. Lawrence,* 33 Ala. 674; *Grace v. Martin,* 47 Ala. 135; *Alston v. Alston,* 34 Ala. 115; *Robertson v. Bradford,* 73 Ala. 116; *Oden v. DePuy,* 99 Ala. 36; *Mundorff v. Wangler,* 44 N. Y. Sup. Ct. 495.

L. E. JEFFRIES, for Reese.—The demurrers of the defendants raise only one question to each count in the complaint, that is whether or not John F. White was continued in office and the sufficiency of the averment of continuance. The first count avers, as to the continuance: "That said John F. White, although not specifically appointed in writing by said Wood to the office of general administrator, yet he was continued in office by said Wood as probate judge, numerous estates being committed to him as such general administrator, among which being the estate of said Christine Heinz." The appellant contends that this is a sufficient averment of continuance, and follows the exact words of the statute and affirms the same.—Code of 1886, § 2027; *Russell v. Erwin,* 41 Ala. 292; 19 Amer. & Eng. Encyc. of Law, 562; *Lane v. Kolb,* 92 Ala. 636; *Crawn v. Com.,*

10 Amer. St. Rep. 843; *McCoy v. Curtice,* 24 Amer. Dec. 115; *Clark v. Taylor,* 68 Ala. 458.

The appellant contends that there was no interregnum between the time the Probate Judge qualified in 1886 and the order. In the absence of an express prohibition an officer holds over after the expiration of his term until a successor is duly chosen and qualified.—19 Amer. & Eng. Encyc. of Law, 562.

A reasonable time is intended to be allowed all officers to make their bonds, qualify, etc., and during this time the sureties of the first officer will be liable on his bond for any default of their principal.—*City Council v. Hughes,* 65 Ala. 206; *Lane v. Kolb,* 92 Ala. 656; 19 Amer. & Eng. Encyc. of Law, 562.

The acts of White in administering on this estate was conclusive of his oppointment.—1 Greenleaf on Evidence, § 92; *McCoy v. Curtice,* 24 Amer. Dec. 115; *Allen v. State,* 68 Amer. Dec. 458; *Johnston v. Wilson,* 9 Amer. Dec. 50; *Crawn v. Commonwealth,* 10 Amer. St. Rep. 843.

PETTUS & PETTUS and R. C. BRICKELL, *contra.*—The general administrator is a *public officer,* holding a public trust—originally without a *term* of office—holding at the mere pleasure of the judge by whom he was appointed. Later legislation creates a definite *term*—the *term* of the judge. The duties of the office are expressed in the statute—the taking of administration in all cases, "in which no other person entitled thereto will administer and no other person is appointed by the court." The appointment, as we have said, not only clothes him with the *capacity* to receive such administrations, but it vests him with the *right* to grants of them. The statute recognizes the *capacity* and the coresponding *right,* for it is only in the event there is no general administrator, and no other fit person will administer, that administration may be granted to the sheriff or coroner, the only public officers, (other than the general administrator), compelled to take administrations.—Code of 1886, § 2029. While a grant to the

sheriff or coroner, if there be a general administrator, is not *void,* it is by the course of judicial decision, esteemed irregular and voidable.—*Burnett v. Nesmith,* 62 Ala. 261; *Burke v. Mutch,* 66 Ala. 558; *Landford v. Dunklin,* 71 Ala. 594.

2. The statute of force when White was appointed and when the bond was executed, reciting in general terms the fact of his appointment, and when his term of office expired, declared as one of the duties of the judges of probate "to keep minutes of all their official acts and proceedings; and within three months thereafter to record the same in well bound books."—Code, 1876, § 695, subd. 2; Code, 1886, § 789, subd. 2. It will be observed that in its terms the statute is broad, comprehending not only the acts and proceedings of the judge while exercising and administering the jurisdiction of the court of probate, but any and all other acts and proceedings pertaining to the office of the judge. "It is an established rule that all pleadings must be construed most strongly against the pleader, who is presumed most favorably for himself to state the cause of complaint; * * * and as a consequence, when the pleadings admit fairly of two constructions, the one least beneficial to him will be adopted."—*City Council of Montgomery v. Hughes,* 65 Ala. 203.

3. Independent of the statute, from the very nature of the office of general administrator, the duties and rights belonging to it, appointment to, or continuance in it, must be manifested in writing—matter of record. If there be not writing, matter of record, how could the judge communicate to other tribunals, the fact of appointment, or of continuance in office? It is that which is matter of record, he may by his certificate authenticate, and which in other tribunals becomes matter of evidence, not of that which rests in parol, or remains in his own breast unexpressed.—*People v. Freeman,* 13 Amer. St. 130. The appointment and the continuance in office of a general administrator, the statute commits exclusively to the judge of probate—the judge of a court of record of general jurisdiction, which, whether in the exercise of judicial or of ministerial power can

speak only by and through its records.—*Speed v. Cocke*, 57 Ala. 216. Memoranda, or any paper found in its files, though signed or purporting to be signed by the judge and purporting to be a judgment or decree, unless entered of record, are of no validity or force.—*Hall v. Hudson*, 20 Ala. 284; *Hudson v. Hudson*, Ib. 364. Unless the appointment and the continuance in office be manifested by matter of record, the public could not be informed who was the incumbent from whom performance of the duties of the office could be demanded; nor could the officer have any muniment of his title to the office. Another consideration which, in this connection ought not to be overlooked, is, that when power to appoint an officer has been exercised, the power is exhausted, and any subsequent appointment is void, unless the incumbent is legally removed, or otherwise the office becomes vacant.—Meechem on Public Officers, § 113; *Thomas v. Burruss*, 23 Miss. 550, 57 Amer. Dec. 154. It is upon this axiomatic principle that grants of administration *de bonis non*, the administration in chief not being vacant, have been declared void when collaterally assailed, although the judgment or decree of a court of general jurisdiction.—*Matthews v. Douthitt*, 27 Ala. 273; *Rambo v. Wyatt*, 32 Ala. 363. Until by matter of record manifesting the original appointment, or the subsequent continuance in office, the power is not exhausted, it remains a mere power, and to its exercise (so far as an appointment is concerned) the judge may, at his discretion, proceed.—*Conger v. Gilmer*, 32 Cal. 79.

4. Whether there was an original appointment of White, exhausting the power, is not now drawn in question—the bond recites it, the recital estopping principal and sureties from disputation of its regularity.—*Plowman v. Henderson*, 59 Ala. 559. The recital is, however, only of the fact of the original appointment; there is no recital touching a subsequent continuance in office, a fact which if it occurred, would occur in the future, and its occurrence depending on the action of the succeeding judge. The estoppel is co-extensive—

neither more nor less—with the obligation of the bond. A settled principle in relation to the liability of the sureties on official bonds is, that if the principal is elected or appointed for a limited period, or a definite term which is recited in the condition, or if not recited in the condition which is fixed and determined by law, the obligations extend only for the period named in the condition, or the term fixed by law.—Meechem on Public Officers, § 286; *City Council v. Hughes,* 65 Ala. 201; *Chelmsford v. Demorest,* 7 Gray, 1; *Mayor v. Crowell,* 40 N. J. Law 208; *Citizens Loan Association v. Nugent, Ib.* 215; *Welch v. Seymour,* 28 Conn. 387; *State v. Powell,* 40 La. Ann. 241. The bond must be construed as if the statute was incorporated in its condition, and if the statute had been incorporated, the condition would have recited the appointment of White for the term of office of the judge appointing him, and that on the expiration of that term, his term of office expired, "unless the succeeding judge shall continue him in office, which the succeeding judge may do." The duration of the term of the office, and the power to enlarge it by the continuance of the incumbent, are members of the same sentence of the statute. They are equally imperative and obligatory, and each must have its natural effect. They are rendered harmonious, if we regard the expiration of the term as conditional, not as absolute. The words import a condition, "unless the succeeding judge shall continue him in office;" but the condition as expressed, depends on the action of the judge, and it is a condition precedent. Until there is continuance, the authority and duty of the incumbent is dissolved. He could not demand vacant administrations from the court of probate, nor could he be compelled to take them. "Upon the expiration of the officers' term, unless he is authorized by law to hold over, his rights, duties and authority as a public officer, must *ipso facto* cease."—Meechem on Public Officers, § 369.

5. The doctrine is well settled, in regard to which all authorities agree, in relation to all forms and every character of suretyship—that the surety is entitled to stand upon the strict terms of his contract. To the

extent and in the manner, and under the circumstances pointed out in his contract, he is bound, and no further. The doctrine is rigidly applied to suretyships on official bonds.—Meechem on Public Officers, §·282. The sureties contracted, consented to be bound, for a time beyond the expiration of the term of office of the judge by whom White was appointed, only upon the condition that the *succeeding judge* continued White in office. They did not consent, or contract to be bound, in the event there was recognition by the court of probate of White as general administrator. We do not insist that to satisfy the words of the statute, or the obligation of the bond, any particular formula must have been observed in the expression of the *continuance in office;* but we do insist, that it must be so expressed *as the act of the succeeding judge, that* it entitles the *administrator as matter of right to continue in office, thereby subjecting him to the performance of its duties, and conferring its rights and privileges.* The judge by whom the original appointment was made, was his own successor. He was as essentially, the *succeeding judge,* within the meaning of the statute, as would have been any other incumbent of the office. "For a man who is re-elected to any office may be truly said to have changed his official personality. Such a person, with respect to his position is another officer, and it is in this sense, that a man in these cases, is sometimes said to be his own successor."—*Citizens' Loan Association v. Nugent,* 40 N. J. Law, 217; *Brennan v. Harris,* 20 Ala. 185; 1 Chitty on Contracts, (15th ed.), 766.

6. The proposition on which the appellants seem mainly to rely, is, that though there was no order or decree, no declaration, or announcement, made, or entered of record by the succeeding judge, continuing White in office, the fact of such continuance is to be *inferred or presumed,* because he was permitted to proceed in the administration of estates which come to his charge under the original appointment and during his official term—because there was no appointment of any person to succeed him in office—and because of the

continuous grants of administration to him, without the requisition of a new bond, until his resignation in 1891. Necessarily, much of this proposition has already been discussed, and we think it has been shown, that on principle and authority it cannot be maintained. As to so much of the proposition, as refers to the supposed permission of White to continue administering estates coming to his charge during his original term, it is sufficient to say, that as to such administrations, his authority did not cease with the expiration of his official term, but continued by operation of law, until the estates were fully administered.—1 Woerner Law of Administration, § 180; *Eubank v. Clark*, 78 Ala. 78; *Rogers v. Hoberlein*, 11 Cal. 126; *Warren v. Carter*, 92 Mo. 291; *Weatherherd v. Baskerville*, 11 How. (U. S.) 329; 2 Smith's Leading Cases (7th edition), 767; *Burlen v. Shannon*, 99 Mass. 203.

7. Now, suppose that by or from the action or nonaction of the court of probate, the appellees could be affected, and we resort, as the appellants are compelled to resort, to inference, or argument, or construction, to deduce the basis of the continuous grants of administration by the court of probate to White as general administrator—*"Is it the inevitable conclusion that he had been continued in office* by the succeeding judge, and the expiration of his official term avoided? That a new bond was not required of him on such grants of administration, did not render the grants *void*—they were merely irregular and voidable if he failed on subsequent requisition to execute such bond.—*Ex-parte Maxwell*, 37 Ala. 362; s. c. 79 Am.Dec. 62; *Cunningham v. Thomas*, 59 Ala. 158; *Dickerson v. Walker*, 1 Ala. 48.

McCLELLAN, C. J.—Prior to April 23d, 1873, there was not statutory limitation upon the term of office of general administrator, the statute theretofore of force being in the following words: "Each judge of probate must also appoint a suitable person as general administrator in his county, who must take charge of the estates of deceased persons, or act as special administrator, in those cases in which no other persons entitled

thereto will administer, and no other person is appointed by the court." By an act approved on said day —April 23, 1873—this statute was amended by adding thereto the last clause as the statute with the amendment is codified at section 2027 of the Code of 1886, viz.: "and his office shall expire with the expiration of the term of the judge who appointed him, unless the succeeding judge shall continue him in office, which the succeeding judge may do; and the same bond, if otherwise sufficient, shall be good, and the administrator and sureties bound thereon." The provisions as to the bond of such administrator found in section 2028 of the Code are the same now as before the act of 1873. They are: "The general administrator of the county must give bond, with at least two sufficient sureties, in an amount to be prescribed by the judge of probate, sufficient to secure all persons interested, payable to the judge of probate, and conditioned faithfully to administer all estates which may come to his hands as such general administrator; which bond must be approved by such judge." With the amendment of 1873, now constituting a part of section 2027, in terms incorporated in the bond of a general administrator, its condition would be substantially this: If the said general administrator shall faithfully administer all estates which may come to his charge as such administrator during the term of his present appointment or during any subsequent period for which he may be continued in office, then this obligation to be void, otherwise to remain in full force and effect. And such condition, of course, would not be broken by unfaithfulness on the part of the principal in respect of an estate of which he should assume administration after the expiration of the term of office of the judge who appointed him county administrator unless he had been continued in office by the succeeding judge. Hence, it must be that a complaint claiming as upon a breach of such condition in respect of an estate coming to the hands of the principal after the expiration of the term of office of the probate judge who appointed him general administrator should show that he had been

continued in office by the succeeding probate judge, else it is bad on demurrer. And the question presented by the appeals in the cases at bar is, whether the complaints, respectively, show a continuance in office of the general administrator by the succeeding judge within the meaning and intent of the statute; the *devastavit* in each case being laid in respect of an estate which came to the hands of the principal obligor after the expiration of the term of office of the probate judge originally appointing him general administrator.

The first count of the complaint in the case of Daly v. the Executors avers that the succeeding judge "did duly continue" the administrator in office, etc., etc. It would seem that this is a sufficient averment of the fact of such continuance in office as the statute contemplates under our system of pleading, whether a due continuance by the succeeding judge involves the making and minute entry of a formal order of continuance or not, since it is only necessary ordinarily in such cases to allege the collective fact of continuance, leaving whatever may be essential thereto in the way of orders, letters of administration and the like to be brought forward in the evidence. But as the real merits of each of the cases must turn upon a consideration of what amounts to a due continuance in office, we need not pass upon the point just stated with reference to the first count of the complaint in one of them. The real facts assumed to be in both cases in the arguments of counsel, and which are certainly found in the case of Reese, and as certainly in that of Daly if we are to give the rule that pleadings must be construed most strongly against the pleader the operation which counsel for appellees in that case insist upon, are that the administrator, one J. F. White, was appointed by Hon. P. G. Wood, the probate judge of Dallas county, at the commencement of the latter's term of office which began in November, 1880, then gave the bond now sued on, and continued in office throughout and was in office at the end of the term of the probate judge appointing him; that said Wood was re-elected in August, 1886, to succeed himself in the office of probate judge for the term com-

mencing on the first Monday in November following, and qualified and entered upon said office and continued therein during said term, that said judge upon such re-election and induction to office, nor during said term, made no appointment of other person to the office of general administrator of the county, nor did he make or enter any formal order continuing said White therein; but that he continued after the commencement of this second term as he had during the first to treat White as the continuing general administrator of the county, and committed to him as such the administration of numerous estates by letters of administration issued to him from time to time commencing as early as November 16th, 1886, and continuing to said White's resignation; and that among the estates so committed to said White were those of Bridget Corcoran and Christine Heinz in respect of which the *devastavits* laid, respectively, in these cases were committed, letters of administration in the latter having been issued to White on November 16th, 1886, and in the former on May 11th, 1887.   There can be no question but that on these facts White was in the ordinary sense of words *continued* in the office of general administrator by Judge Wood upon the latter's induction into office in November, 1886.   It was Wood's duty to keep the office filled, to keep an incumbent in it.   This duty he could perform on the commencement of his second term in at least two ways:   He could either make a new appointment, thereby initiating a new term of office in the general administratorship, or he could affirmatively treat White as still holding the office, thereby not initiating a new term at all, but merely extending an existing term.   He did not adopt the former course: he made no new appointment either of White or other person.   But he in point of fact adopted the latter:   He allowed White to proceed with the administration of estates already in his hands without interim, let, break or hindrance, and he affirmatively recognized White's continuance in the office by committing to him as such officer the first estate requiring the services of a general administrator—and this within

a few days of the commencement of his own term as judge of probate—and every other estate proper to go into the hands of the general administrator; and White by virtue alone of such continuance in office proceeded to administer all estates thus left in his hands or committed to him after the beginning of the judge's new term. It is obvious that the probate judge did everything that was possible for him to do in respect of continuing White in office, except that he did not enter a formal order or memorandum to that end or evidencing the fact on the minutes of his court. And the sole remaining inquiry is: was such order essential to an efficacious legal continuance of White in office? It is insisted such order was essential for that in section 789 of the Code it is made the duty of the judge of probate "to keep minutes of all his official acts and proceedings; and, within three months thereafter, to record the same in well bound books." Of course, on the assumption that affirmative action on the part of Judge Wood was necessary to continue White in office, such continuance in office is an official proceeding or act of the probate judge, and should be entered on the minutes and afterwards recorded. But it does not follow from the fact that the judge of probate failed to do his duty in this connection—failed to note and record the fact that White was continued in office—that White was not so continued—that the fact of continuance itself did not exist. The collective fact of such continuance clearly appearing from the absence of appointment of his successor, his continued administration in the probate court of estates which had already come to his hands and the affirmative acts of the probate judge in granting to him as general administrator letters upon a number of estates after the expiration of the term of office of the judge appointing him, is not, in our opinion, emasculated by the judge's mere failure of duty to make a record of the fact, which is as clearly shown by the averments of these complaints as if the record had been made. Again, it is insisted that the averments show a hiatus in White's tenure of the office, in that no letters of administration were issued to him immediately upon

the induction into office of the succeeding probate judge. This contention would be as apt if there had been a formal order and entry thereof made a week or a day after the judge's term began. It is untenable upon reason. There is no hiatus in either case. In both the tenure is to be held to have been unbroken, and the letters or the order, as the case may be, are to be taken as the evidence of the fact that the administrator has been continued in office from the moment at which but for such continuance his term would have expired. It is further contended that the sureties, entitled, as they are, to stand upon the letter of their obligation, cannot be held in the absence of a formal order of continuance; the idea being that the condition of the bond, with the statute incorporated into it, requires such order. But the letter of the bond requires only that the administrator shall be continued in office by the succeeding probate judge, and if, as we think, an efficacious continuance may be made without such formal order, the letter of the condition is filled by the continuance shown in these cases.

Our conclusion, therefore, is that on the averments of the complaints there was a continuance of White in the office of general administrator of Dallas county by Judge Wood upon the latter's succession to the office of probate judge for the term commencing in November, 1886. Some of the counts in the complaint of Daly are faulty on the principles we have declared; but the first count in that complaint we hold to be sufficient. So in Reese's case, some of the counts clearly show a continuance of White in office by the probate judge by a continued recognition of him as general administrator in the issuance to him of letters of administration upon numerous estates after the expiration of Judge Wood's first term, including the estate in respect of which the suit is instituted which is alleged to have been formally committed to White as such administrator on November 16th, 1886, a few days after Wood's induction into office for the current term, and in otherwise dealing with him in that capacity. There being thus good counts in the complaint in each of the cases, the city court erred in

sustaining the demurrers to the complaints as a whole and to such counts specifically.

This cause has been twice argued at the bar. It has been argued upon either hand on both occasions upon the assumption that it was necessary under the statute for a succeeding probate judge to affirmatively continue the general administrator, appointed by his predecessor, in office, and so we have treated the case here. We are not, however, to be understood as so deciding. To the contrary, in view of the history of legislation on the subject, it may be that our statute is to be held to mean merely that the judge of probate *may allow* the general administrator to continue in office, and that he will so continue in the *absence* of action on the part of the judge affirmatively indicating an intention not to allow him to so continue.

Reversed and remanded.